Before I begin my argument, I would like to tell the court that during oral argument preparation, my backups and I discovered an issue with the issue that's now pending in the Eleanor Supreme Court about the admission of a prior consistent statement that we neglected to raise in our original brief. And I've informed my opponent about this and I'm intending to seek leave to file a supplemental brief on that issue early next week. I don't know what the ruling is going to be, obviously, but I just wanted to let the court know that we just discovered this this week. And I apologize for the omission. Motion to seek to leave to file a supplemental brief, that's what I was planning on doing. Yes. They can respond. Okay. Thank you. I would now like to focus my argument on the first two issues that I raised in my brief in this case. Regarding the first issue, my client, Vernon McCormick, was unduly prejudiced by the admission of his taped interrogations where the jury, unassisted by any limiting instruction or guidance, heard police officers relate that they had incriminating evidence against him based on what people were His actual statements that came out of the interrogations consisted of no admissions to this offense. He gave an alibi in the first interrogation. He explained why he omitted part of his alibi when he was interrogated a second time because he was participating in criminal activity. He did not want to disclose to the police. And he repeatedly denied that he was a shooter in this case. The rest of the recordings consisted largely of the detective's questions, their out-of-court insinuations, accusations, and opinions that Mr. McCormick was lying and was guilty. The statement is the argument that whatever the officer said was not improper and not hearsay because they didn't testify to any misunderstand, and the statements only were used to show the effect on Mr. McCormick, the effect on the listener. However, whatever the legal classification of the officer's statements, the jury, again, had no guidance on how to view these statements. These were men who testified at trial, and here they are on tape saying, you know, you're guilty. We have evidence that you're guilty. You should tell us that you're guilty. And the exception also doesn't even apply because what the officer said to my client had no effect on his behavior. He didn't make any admissions. He didn't change his behavior or his cooperation. He spoke with them in the same tone of voice until he finally stopped the second interrogation and told them he was done speaking with them. Moreover, in whatever context these statements were offered, what remains is that the jury had no guidance on any limiting instruction. These officers were persons of authority who obviously knew my client, knew about the gang situation in the Joliet area, and believed my client was the guilty party. Yet the state argues that no instruction was needed because this wasn't hearsay. Again, this begs the question. The jury had no idea how to look at the officer's statements. Defense counsel is ineffective for not at least proposing a limiting instruction. He objected to some of the statements. Some of them got redacted. In this case, he should have objected to the admission of any of the recordings completely, or on the alternative, at least propose a limiting instruction on how the jury should regard the officer's statements that were included in those interrogations. The state argues that requesting such an instruction would undermine defense counsel's strategy concerning the introduction of the co-defendant, or I'm sorry, Dante Thomas, his friend's prior inconsistent statement where he said that McCormick implicated himself. On the contrary, an instruction not to consider the officer's statements as true would not have undermined the strategy at all. Defense counsel could have argued that the officer's effect on Dante was to change his story and implicate my client because he was pressured by the officers. Moreover, the effect of the officer's statements was much more prejudicial with respect to my client. My client was on trial. Thomas was not. Any strategic decision should have been made with my client in mind. Therefore, counsel's actions in not objecting to the complete admission of these interrogations, or in the alternative, proposing a limiting instruction was unreasonable. It also prejudiced my client. The evidence in this case was very close. He made no admissions. There was no eyewitness account, no physical evidence beyond some gunshot residue found on a sweatshirt that had been in police custody for a year, since four days after the shooting, and no gun. All we have here is a recanted statement from my client's friend, unbelievable testimony that my client made admissions to fellow jail inmates who got consideration for their testimony against my client. They were allowed to leave jail that day. They were assisted with moving expenses. And there was this alleged game motive. What about the cab driver testimony? Well, my client said that he went to this person's house in the second interrogation. But he explained that he was dealing drugs. So that's why he admitted talking about the cab to the police the first time. So there was a cab ride. He just didn't admit to it the first time. If your Honor has no further questions about this issue, I'd like to touch also on the voir dire questioning issue. I raised it in my second issue. Here counsel was also ineffective for not requesting that the veneer be questioned about their gang bias. This case was about gangs. The state argued that there was a gang motive for the shooting. It was revenge. There was gang warfare in the area. Two gang experts testified to my client and the intended victim's gang membership and race within those gangs. The state argued that Dante Thomas changed his story on the stand because he didn't want to rat out a fellow gang member. Mr. McCormick had a tattoo of his friend who had been killed on his face. This gang evidence pervaded this trial. Even the defense counsel recognized it might be a problem in his opening statement and closing argument. Yet he failed to do all he can to ensure that the jury was not biased against gangs from the outset. The time to do that is when the judge said, do you want me to ask the jury any questions? That's why the judge often asks the jury the veneer questions about whether they're biased for or against cop testimony. It's a similar situation. Mr. McCormick was also prejudiced by counsel's failure where the question would have been allowed by the judge and would have given the defense the requisite assurance, as much as you can be assured you have an unbiased jury, that no improperly biased juror would slip through. The jury was told that they can't let bias rule their decision. However, they wouldn't necessarily think that this meant gang evidence. They didn't know this case was about gangs. Defense counsel did. They didn't know until they heard the evidence. Counsel's argument in opening argument and closing was just too late. He should have done something about this before trial. If there are no further questions on any of my issues, I'm prepared to answer questions on the third issue. Also, we just request that this case be remanded for a new trial or a clinical inquiry based on many instances of counsel's ineffectiveness. Any other questions? Thank you, Ms. Harrigan. Mr. Michael? May it please the court? Counsel? Lord to Michael, on behalf of the people. The people would likely be objecting to the new issue based on the timing, although we haven't seen what the new issue is yet. Regarding the first issue with defendant's statement, defendant waived this argument. He made only different objections below. Counsel and the people went over the transcripts of the calls with the trial judge, made many numerous redactions, either out of agreement or the trial judge ordered the people to redact it. But these objections weren't made then. Moreover, the statement was properly admitted. The Tice case is directly on point and it was correctly decided. It's in line with Hansen, the Illinois Supreme Court case out of 2010. And Munoz. Additionally, no limiting instruction was ever requested by defense counsel. But that doesn't mean he was ineffective. There's the people versus people's case, first district 2007, where the court found that although there was no limiting instruction given, that didn't transform non-hearsay testimony into hearsay. And also, defense counsel's own argument was, look, you shouldn't believe Thomas because even the police officers didn't believe Thomas because that's what they said in their interrogation. And under the Scott case in 1992, when the defense counsel argues the substantive admissibility, there was no deprivation of a fair trial with the absence of a limiting instruction. Moreover, defendant had to admit that he was lying in a second statement anyway because his cell phone records contradicted where his whereabouts had been in the first statement. So as a matter of strategy, it made sense to admit he was lying in that statement because it was contradicted by other evidence anyway and focus on attacking the Thomas statement however possible. Moreover, the evidence wasn't closely balanced. There was the gunshot residue on defendant's hoodie, indicating consistent with the gun having been fired by the wearer of the hoodie. In addition to Thomas stating the defendant admitted the crime to him, and Thomas didn't recant until he was subpoenaed to testify at trial. Also, it was clear why he would recant, as he said people are going to be looking for him when they found out that he told the police officers about the shooting. There was also the Lewis statement. And while Lewis appears to have been in jail at the time he testified, I believe there's indications in the record that he was in jail because he failed to show up on a subpoena to testify in that case. And he had been in jail at the same time as defendant, not on this offense, but there had been a previous offense. Regarding the other evidence, defendant also lied to police about what his cell phone number was and also where he was. He lied where he was in the first statement and in the second one he still said he was back in his girlfriend's house by 8.30. The phone records contradicted that he wasn't back until later, so he continued to lie then too. He also told his girlfriend not to testify, even though she was his alibi. So one would think that if she's going to testify, he was with me at 8.30 at the time of the shooting, he would really be encouraging her to testify, not saying, oh, you don't have to. And lastly, there is the motive, as his really, really good friend had been killed by Jayvon Leslie two weeks before this shooting, and the shooting was aimed at Jayvon Leslie's house, although it was his younger brother and two other friends who were struck by the bullets. Regarding the second issue, the gang bias question issue, the issue here is really whether a defense counsel has any discretion in how to deal with potential gang bias. No case has ever found counsel ineffective for failure to request a gang bias question before. Strain case is different because defense counsel had requested it. Instead, the case law, Masias and Benford cases, indicate reasons not to request such an instruction, not wanting to highlight the evidence further. So here, instead of highlighting the evidence further, counsel decided to deal with this potential issue through argument. So he made clear through his argument that, you know, just because he was in a gang couldn't be considered evidence of his guilt. So that's just an alternative way of dealing with the issue, and jurors had been questioned on their abilities to be impartial and fair in general. So the Powell case then is instructive, because in that case, the court found no prejudice, because jurors had been questioned generally on their ability to be fair, even though there was no gang bias question in particular. So counsel was not ineffective for choosing to address the issue through argument instead of through a question to potential jurors. And if there are no further questions, the people had asked that this court affirm defendant's conviction and sentence. Well, the last issue I think raised is about the letter to the court that pro se claims of ineffective assistance. Well, regarding the third issue, the defendant did file a letter, and the judge did address the letter. The judge apparently interpreted it as a motion for transcripts, concerned that the defendant wouldn't be filing his motion for new trial on time. So he did deal with it. He said, or I think it was she said that she was going to be extending the time to filing until sentencing. And so I think she had dealt with the issue. And the thrust of the letter, defendant says he wants to file a motion for new trial through counsel, which suggests that he was accepting the counsel he had. And then when the motion for new trial was, it was filed, it was timely, and defendant didn't take any issue with its contents at that point. Any other questions? Thank you. Thank you, Your Honors. Ms. Larigan, any rebuttal? Yes, Your Honor. As to the gang bias issue, the defense counsel's strategy would have been bolstered by having the question asked to the veneer, as well as making the argument in opening statement and closing argument. In the Powell case, which my opponent cites, in that case, the defendant actually needed some gang evidence in because he was alleging self-defense. In this case, we have a great deal more prejudice because the victim here was a child. It was somebody that was not in a gang. And yet all this evidence from the prosecution about this offense was about gangs and what happens between these two gangs in this area. And has any court ever held counsel unaffected for failure to bargain? No, Your Honor. They haven't. We are arguing that this is a case where counsel wasn't affected for doing so. As far as the third issue, the Krinkle issue, the part of the letter that the judge never addressed that my client wrote was where he said his attorneys did not file motions that he wanted that he thought would make a difference in his case. He's not obligated to mention this more than once under Williams, under Moore. And the judge actually completely ignored this part of the letter. She never addressed it. But the letter was an ex parte communication to the court. Correct. But that's how defendants often will complain about their attorneys' performances. The judge did what she needed to do. She set the matter, didn't she? I mean, there was a new motion for a new trial filed within a week or so of that. And then she appeared in court with everybody there and she had shared the letter, I assume, with everybody. Correct. But she never actually... And nobody renewed it. Well, he's not obligated to renew it. Once a defendant complains about his attorney... Do you know how many letters? Well, probably you do because you get a lot of letters as well. But I'm just talking about... A judge is under Moore and Krinkle and it's Progeny and Williams. The judge does have to respond to defendants' complaints of ineffective assistance of counsel. Normally they arise in the courtroom with both parties present. They sometimes arise orally. Sometimes they arise in a defendant's own motion, which is written, which is mailed to the judge. Sometimes they arise in a letter. I've had many circumstances where that's how a client communicates with a judge in written form. So even though the defendant appeared in front of the judge later and didn't bring those issues up, do you think the judge should have reminded everybody? Under the case law, the defendant need not bring it up again. Once it's brought before the judge in any manner, it does not have to be in open court. The judge is obligated to at least inquire about what the defendant is talking about. If there are no further questions, thank you. We thank you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel change.